## WYGANT *v.* BROWN.

*(Supreme Court, General Term, First Department.   March 28, 1890.)*

WRIT—SERVICE OF PROCESS—EVIDENCE.

Upon a motion to vacate a judgment as rendered without service of process, the evidence relied on by defendant to meet the positive testimony that he was served with the papers at a certain hotel in New York city on the morning of February 4, 1886, consisted principally of his own testimony that he had left the hotel on the previous evening, and arrived at Baltimore the following morning, and the testimony of his wife, who corroborated him as to the time he left the hotel, and testified that she followed him on the morning of the 4th, but it appeared that when her trunk was unpacked the summons and complaint were among the papers then taken out, and she in no way attempted to explain their presence there.   The person who served the papers testified that, after defendant had been served, he went back, apparently, to his room, and shortly afterwards left the hotel.   *Held,* that the motion was properly denied.

Appeal from special term.

Action by Grace Wygant, as executrix of Stephen T. Wygant, deceased, against Joseph M. Brown.   Defendant appeals from order denying his motion to vacate judgment.

Argued before VAN BRUNT, P. J., and BRADY and DANIELS, JJ.

*Robert Christie,* for appellant.   *E. A. S. Mann,* for respondent.

DANIELS, J.   The motion was made to set aside the judgment upon the ground that the summons and complaint in the action had not been served upon the defendant.   The judgment was entered in December, 1886, while the summons and complaint were stated to have been served upon the defendant personally upon the 4th of February of the same year.   The affidavit of service was made by William Talbot, who was at the time employed at the Victoria Hotel, where the service is stated to have been made.   The affidavit of service in form complies with what the practice and the rules require; for it is stated in it by Talbot that he is a person of full age, and that he knew the person to whom the copy of the summons and complaint was personally delivered to be the person described in the summons as defendant therein.   There was no deficiency, therefore, in the form of the proof of the service of the papers.   But on the part of the defendant his affidavit is positive that he was not at the Victoria Hotel, in the city of New York, at the time when it is stated the service was made, but that he left there near the hour of 11 o'clock in the evening of the 3d of February, 1886, and went to the city of Baltimore, where he arrived on the morning of the 4th, and remained there during that and the three following days.   If this statement of the defendant was accurately made, then it was not possible that the summons and complaint could have been served upon him as it was stated to have been by Talbot. And, the fact being in this manner controverted, a reference was ordered to take proof concerning this disputed fact; and upon that reference the defendant testified, as he had stated in his affidavit, that he was absent from the city of New York at the time when it is sworn that this service was made upon him.   His statement is that he reached Baltimore in the morning of the 4th of February, 1886, and was there for three days after that date; and evidence was produced to sustain the defendant in this statement.   It consisted, in part, of duplicates of the bill which was paid by the defendant for his hotel expenses at the city of Baltimore; the original bill having been lost or mislaid, and incapable of being produced.   But these duplicates are not entirely in harmony with the defendant's testimony.   The first is made out to "Mr. J. Brown and wf.," and the first charge contained in it, "Room 50; days, 4." The other duplicate is made to "Mr. J. N. Brown & Co.   Room 50; days, ———;" stating no number of days.   And still another was made out to "Mr. J. M. Brown and wf.;" the first charge being:   "Room 50; days, 4."   The differences or variations in the bills indicate that they could not have been made

out from the same account, and tend to discredit them as reliable testimony, and detracting from their effect as evidence corroborating the defendant's statement.

Further reliance was placed upon the testimony of Mr. Rooney, who was employed at the hotel in Baltimore in February, 1886, as night clerk. He testified that he commenced his service about 7 o'clock in the evening, and left about 8 or 9 o'clock the next morning; and that, before he left on the morning of the 4th, the defendant, with several other gentlemen, reached the hotel; that it was along about breakfast time; and that he himself assigned the room to the defendant, after he returned to the hotel for the discharge of his duties as night clerk. His testimony was positive that the defendant arrived there on the 4th of February, but he was not so positive that he did see him in the morning, having no fact or circumstance to connect his memory with that event, further than the impression remaining upon his mind in February, 1888, when he was examined, and which was more than two years after the occurrence of the fact in controversy. The books of the hotel were produced upon the examination, and an entry was brought to the attention of the witness, who stated that it was in his handwriting. This entry was: "J. M. Brown and wife. Room number 50, 4 F." And this statement would seem to indicate that the defendant and his wife had arrived at the hotel in the afternoon, before the time for the return of Rooney in the evening as night clerk, and had then been assigned to their room, and that fact tended to subject the testimony of Rooney, certainly as to the time of his return to the hotel in the evening, to discredit, and to indicate the fact to be that Mr. and Mrs. Brown arrived at the hotel about 4 o'clock, and previous to the hour set for tea. This witness had no special fact by which his recollection could be carried back with any degree of certainty to the arrival of the defendant at the hotel, before the time when the room assigned to him and his name was registered in the book; and his testimony fails to add any great weight to that given by the defendant himself as to what had taken place.

In the affidavit made by the defendant's wife she states that he did leave the Victoria Hotel about the time mentioned by himself, and that she followed him on the morning of the 4th, and met him at the hotel in the city of Baltimore; and so far it corroborates the statements which he made concerning the time when he left the hotel in the city of New York. But it appeared from the evidence of the defendant himself that on the arrival of his wife at the city of Baltimore her trunk was unpacked, and the summons and complaint were among the papers then taken out; and she, in her affidavit, has in no manner explained how the summons and complaint should have been found in the trunk, unless they were served upon the defendant as Talbot swore he made the service. His statement was that he served the papers at the head of the stairs, where he met the defendant, and that the defendant then turned around, and went back, apparently, to his room. This was repeated, also, by him upon his cross-examination, and he adhered positively to this statement; and the additional fact was testified to by him that the defendant shortly afterwards left the hotel, and took away the key of the room with him, and his wife could not go into the room, and for that reason a man had to be sent through the transom. This circumstance has not been denied on behalf of the defendant; and, if it occurred as Talbot states it did, it would have a tendency to fix what had taken place in his recollection. His statement as to the fact of the service of the summons and complaint is also, in some degree at least, confirmed by the evidence given by McCarty, who gave him the papers to serve, and in five days after that took his affidavit, which forms a part of the judgment roll, stating the fact of service. If these persons, and especially Mr. Talbot, are not right in their statements of what took place, it is next to impossible to imagine how this summons and complaint should have been found in the trunk of Mrs. Brown on the day of her arrival in the

city of Baltimore. That is a stubborn circumstance, indicating that this paper had been taken by the defendant, and left in his room at the Victoria Hotel, before he departed for the city of Baltimore, and that it had been packed by his wife, with other papers in the room, in her trunk prior to the time when she followed her husband. That is the presumption, certainly, arising out of the circumstance; and, if it was not well founded, the least that could be expected would be that Mrs. Brown would have made some explanation inconsistent with it in her own affidavit; but that she wholly failed to do.

The probabilities of the case are that the copy, summons, and complaint were served upon the defendant as Talbot stated it was in his affidavit, and that the defendant has mistaken the time when he departed from the Victoria Hotel to go to the city of Baltimore, and that after the papers were handed to him he returned to his room, as Talbot states he did, and there left this summons and complaint, which, with the other papers, were afterwards put into the trunk of Mrs. Brown by herself, and taken to the city of Baltimore when she followed her husband. That is the most rational view which can be taken of this case; and it not only justified, but required, the conclusion to be adopted and followed,—that the defendant was served with the summons and complaint as the fact has been stated in the affidavit, which is made a part of the judgment roll. The order should therefore be affirmed, with $10 costs and the disbursements. All concur.